Ann Gregory MATHEWS, Bankrupt,
Dominion National Bank of
Richmond, etc.

v.

Leonard E. STARR, III, Trustee.

Civ. A. No. 78–0148–R.

United States District Court,
E. D. Virginia,
Richmond Division.

July 13, 1979.

Miles Cary, Jr., Richmond, Va., for plaintiff.

Leonard E. Starr, III, Richmond, Va., for defendants.

MEMORANDUM

WARRINER, District Judge.

The question here is whether 114 shares of Philip Morris, Inc. common stock belong to Dominion National Bank or to the Trustee in bankruptcy for the benefit of unsecured creditors of the bankrupt. The bankrupt, Ann Gregory Mathews, had pledged certificates representing 114 shares of common stock in Philip Morris, Inc. to Dominion National Bank as collateral for her guarantee of certain loans made by Dominion to a partnership. Bankrupt defaulted and in due course the collateral was sold by the Bank but the proceeds were insufficient to pay the loans. In the meantime, unbeknownst to the Bank, Philip Morris declared a stock split and bankrupt received a certificate representing an additional 114 shares in May of 1974. Bankrupt's voluntary petition filed on 31 December 1974 failed to list the additional 114 shares though they were in her possession. In 1977 the Trustee in bankruptcy was advised that the 114 shares were in possession of the bankrupt and they were thereupon delivered to the Trustee. The Bank seeks the shares as rightfully belonging to it as additional loan collateral.

The Bankruptcy Judge determined that the Bank had not perfected its lien on the 114 shares in question because it had never reduced the certificate to possession. The Bankruptcy Judge cited as authority Va. Code §§ 8.9–201 and 8.9–301(3) and § 70 of the Federal Bankruptcy Act. This decision was affirmed by this Court but said judgment was vacated on 17 November 1978 and the appeal was placed on the general docket of this Court for further proceedings.

On 16 May 1979 plaintiff presented the legal argument to the Court, by way of brief, that though the Bank may not have perfected its security interest in the stock by obtaining possession, an equitable lien had been created in favor of the Bank and the title in the Trustee was impressed with this equitable lien in favor of the Bank. On 29 May 1979 the Court directed defendant

38

to file a reply brief within 10 days. No brief has been received. Accordingly, the Court will consider the question on the present state of the record.

The Bankruptcy Court is correct in its view that Dominion Bank did not perfect its security interest in the stock. However this does not preclude the relief requested. Although the certificates covering the stock were in the bankrupt's possession, such documents are mere evidence of an intangible interest in the stock company, an interest which the Bank possessed as a matter of law when the pledge was made. This interest or right continued despite declaration of the stock split. Since a Trustee in bankruptcy takes the bankrupt's property subject to any rights or equities which could have been asserted against the bankrupt, plaintiff may assert its interest in the stock as against the Trustee.

This decision has its support in a long line of cases beginning in 1896. *See Meredith Village Sav. Bank v. Marshall,* 68 N.H. 417, 44 A. 526 (1896). Citing the *Marshall* case Judge Parker of the Fourth Circuit ruled on a case which directs our decision today— *Powell v. Maryland Trust Co.,* 125 F.2d 260 (4th Cir.) *cert. denied,* 316 U.S. 671, 62 S.Ct. 1041, 86 L.Ed. 1746 (1942). In *Powell,* a railroad pledged 4,450 shares of Richmond-Washington stock to the plaintiff Trust Company to secure a bond issue. Subsequently a 50 per cent stock dividend was declared. Without knowledge of such action by the plaintiff, 2,225 shares of stock were delivered to the railroad. Thereafter the railroad went into receivership and the certificates passed into the receiver's possession. Judge Parker held that the stock dividend issued was subject to the original terms of the pledge since the new shares and the original shares together represented the same book value as the original shares represented before the new ones were issued.

Although the Court spoke of "stock dividends" it is not clear whether the action by the stock company was the issuance of a stock dividend or a stock split. 19 Am. Jur.2d Corporations § 809 explains the difference between the two as follows:

In [a stock dividend] there is a capitalization of earnings or profits, together with a distribution of the added shares which evidence the assets transferred to capital, while in [a stock split] there is a mere increase in the number of shares which evidence ownership without altering the amount of capital, surplus, or segregated earnings. In brief a stock split is a mere dividing up of the outstanding shares of a corporation into a greater number of units without disturbing the stockholder's original proportionate participating interest in the corporation.

In *Powell* the Court noted that the stock company had accrued earnings subsequent to the pledge which justified the declaration of the stock dividend. However, it also stated that immediately following its issuance, the total book value of the original shares plus the shares issued as a stock dividend was precisely the same as the book value of the original shares immediately prior to this action. This indicates that the issuance of stock had been one merely of form, rather than of substance, and was therefore more in the nature of a stock split.

Assuming *Powell* dealt with a stock split, its holding is directly on point. Since the stock split converting 114 shares of Philip Morris stock into 228 shares did not change the proportionate interest in the corporation originally pledged, the entire 228 shares are subject to the pledge agreement.

Our decision here would still stand even if *Powell* did concern the issuance of a stock dividend rather than a stock split. If a pledgee is entitled to a stock dividend, which represents a capitalization of earnings, surely it should be entitled to the shares issued pursuant to a stock split where there is absolutely no economic change in the interest originally held.

It is well settled that "the trustee takes the bankrupt's title subject to all valid equities, equitable liens or equitable assignments asserted against the bankrupt's property. . . ." 4A *Collier On Bankruptcy* § 70.62 (14th Ed.1978). *Accord, Powell v.*

 

*Maryland Trust Co.,* 125 F.2d 260 (4th Cir.), *cert. denied,* 316 U.S. 671, 62 S.Ct. 1041, 86 L.Ed. 1746 (1942); *Meredith Village Sav. Bank v. Marshall,* 68 N.H. 417, 44 A. 526 (1896).

Since the Bank at all times possessed the interest in Philip Morris, represented first by the 114 shares originally pledged and later by the 228 shares as a consequence of the stock split as against the bankrupt pursuant to the pledge, it is entitled to the certificates evidencing these rights as against the bankrupt's Trustee.