In re John Clarence WHITAKER, Mary Ruth Whitaker, Debtors.

FEDERAL DEPOSIT INSURANCE CORPORATION AS LIQUIDATOR OF the MISSION STATE BANK AND TRUST COMPANY, Plaintiff,

v.

John Clarence WHITAKER, Mary Ruth Whitaker, and F. Stannard Lentz, Trustee, Defendants.

Bankruptcy No. 81–20207.
Adv. No. 81–0209.

United States Bankruptcy Court,
D. Kansas.

March 15, 1982.

A. Glenn Sowders, Jr., Kansas City, Mo., for debtors/defendants.

William O. Isenhour, Jr., Mission, Kan., for debtors.

R. H. Foerschler, Kansas City, Kan., for plaintiff.

F. Stannard Lentz, Shawnee Mission, Kan., trustee.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for pretrial on October 8, 1981, upon plaintiff's Complaint to Modify Stay and for Order of Abandonment or Turnover. Plaintiff, Federal Deposit Insurance Corporation (FDIC), appeared by Robert H. Foerschler of McAnany, Van Cleave & Phillips, P.A. The trustee, F. Stannard Lentz, appeared in person and as his own attorney. The debtors' attorney, A. Glenn Sowders, Jr., had previously advised the Court that neither he nor the debtors would appear.

At the pretrial, plaintiff and trustee agreed that the matter could be resolved upon the submission of stipulations and briefs to the Court. Plaintiff and trustee filed stipulations within the Pre-Trial Order. The debtors were not a party to said stipulations, but the debtors do not contest the truth of the stipulations. Plaintiff and trustee also filed briefs in support of their respective positions.

## FINDINGS OF FACT

Based on the pleadings, briefs and file herein, this Court finds as follows:

1. That this Court has proper venue and jurisdiction.

2. That on August 1, 1979, the debtors obtained a $79,017.67 loan from the Mission State Bank & Trust Co. (MSB). As security for the loan, the debtors pledged certain corporate stock to MSB, including:

Stock certificate # S252053 for 100 shares in Exxon Corp.

Stock certificate # N62849 for 100 shares in Exxon Corp.

Stock certificate # VN176881 for 100 shares in American Brands, Inc.

The debtors executed a standardized security agreement that said the security interest applied to proceeds and profits.

3. That the three stock certificates were manually delivered to MSB.

4. That on March 6, 1981, the debtors filed a Chapter 7 petition in bankruptcy.

5. That effective May 26, 1981, a 2 for 1 split of the American Brands, Inc. stock occurred. Effective June 12, 1981, a 2 for 1 split of the Exxon Corp. stock occurred.

6. That two stock certificates representing the stock splits were mailed to debtor, Mary Whitaker, as stockholder of record. On August 21, 1981, the debtors, through their attorney, mailed the two certificates to the trustee:

Stock certificate # T–309237 for 200 shares in Exxon Corp.

Stock certificate # M228780 for 100 shares in American Brands, Inc.

7. That on August 20, 1981, FDIC, as liquidator of MSB, filed a proof of claim herein for the balance due on the loan, $69,315.64.

## ISSUE

WHETHER A CREDITOR/PLEDGEE OF STOCK IS ENTITLED TO ADDITIONAL SHARES ARISING FROM A POST PETITION STOCK SPLIT, OR WHETHER THE TRUSTEE IS SO ENTITLED.

## CONCLUSIONS OF LAW

■ The general rule is that property acquired by the estate or the debtor after the commencement of the case is not subject to security agreements executed prior to the commencement of the case. The exception to the rule is found in 11 U.S.C. § 552(b), which states:

"§ 552. Postpetition effect of security interest.

(b) Except as provided in section 363, 506(c), 544, 545, 547, and 548 of this title, if the debtor and a secured party enter into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to the extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

The trustee argues that § 552(b) is inapplicable because the additional shares of stock are neither proceeds, product, offspring, rents or profits of the original stock. He argues that the U.C.C. definition of proceeds indicates that proceeds are what arise from a *disposition* of collateral; and that no disposition has occurred here. Furthermore, the trustee argues, the additional shares are not proceeds even under the more liberal definition of proceeds alluded to in the legislative history of § 552:

"The term 'proceeds' is not limited to the technical definition of that term in the U.C.C. but covers any property into which property subject to the security interest is *converted*." H.R. 95–595, 95th Cong., 1st Sess. 376–377 (1977) (emphasis supplied), U.S.Code Cong. & Admin.News 1978, p. 5787.

To discern the nature of the additional shares of stock, one must understand the nature of a stock split. It is stated in 19 Am.Jur.2d *Corporations* § 808:

". . . The essential distinction between a stock dividend and a stock split is that in the former there is a capitalization of earnings or profits, together with a distribution of the added shares which evidence the assets transferred to capital, while in the latter there is a mere increase in the number of shares which evidence ownership without altering the amount of capital, surplus, or segregated earnings. In brief, a stock split is merely a dividing up of the outstanding shares of a corporation into a greater number of units, without disturbing the stockholder's original proportional participating interest in the corporation. A stock split is essentially one of form and not of substance."

Thus, a stock split is an accounting device, not a distribution of corporate earnings, like a cash or stock dividend. Technically, in a stock split, the original shares are neither disposed of or converted into the new shares. Rather, the original shares are devalued, but supplemented by the new shares so that the stockholder retains the same proportionate interest in the corporation.

When a creditor takes a security interest in shares of stock, he is really taking a security interest in the proportionate interest in the corporation that those shares represent. By definition, a share of stock is a unit of interest in a corporation. It entitles the shareholder to a proportionate part of the property or its proceeds when distributed according to law and equity. 18 Am.Jur.2d *Corporations* § 194.

■■ Thus, when a creditor takes a security interest in shares of stock it is a fair inference that he intends that his security interest continue in the additional shares from a stock split, so that he may retain a security interest in the same proportionate interest in the corporation. This Court finds, therefore, that the additional shares from a stock split are proceeds within the meaning of the parties' security agreement and within the meaning of § 552(b). Thus, the additional shares acquired in the postpetition stock split are subject to the security agreement between MSB and the debtors.

The trustee further alleges that § 552(b) is subject to § 544(a); and that his status as an ideal lien creditor results in his interest in the additional shares being superior to FDIC's unperfected interest. FDIC contends that this Court should find an equita-

ble lien in its favor, particularly since it was stayed from perfection because the petition was filed before the stock split occurred.

In a case very similar to the one at bar, the Bankruptcy Court held that the trustee prevailed, pursuant to section 70(c) of the old Act [1], over a creditor with an unperfected security interest in additional shares arising from a stock split. *In re Mathews*, 3 B.C.D. 1288 (E.D.Va.1978). However, the District Court reversed the Bankruptcy Court in *Mathews v. Starr*, 475 F.Supp. 37 (U.S.D.C.E.D.Va.1979). The District Court found an equitable lien in the creditor's favor, in spite of the fact that there the creditor could have perfected its interest, since the stock split occurred before the filing of the bankruptcy petition. The Court further stated in *Mathews v. Starr*, supra, at pg. 38:

"The Bankruptcy Court is correct in its view that Dominion Bank did not perfect its security interest in the stock. However this does not preclude the relief requested. Although the certificates covering the stock were in the bankrupt's possession, such documents are mere evidence of an intangible interest in the stock company, an interest which the Bank possessed as a matter of law when the pledge was made. This interest or right continued despite declaration of the stock split. Since a Trustee in bankruptcy takes the bankrupt's property subject to any rights or equities which could have been asserted against the bankrupt, plaintiff may assert its interest in the stock as against the Trustee."

The Virginia District Court relied heavily on *Powell v. Maryland Trust Co.*, 125 F.2d 260 (4th Cir. 1942), *cert. den.* 316 U.S. 671, 62 S.Ct. 1041, 86 L.Ed. 1746 (1942). In *Powell*, a railroad pledged 4450 shares of stock to its creditor to secure a bond issue. Subsequently, a "50% stock dividend" was declared and the corporation, without knowledge of the pledge, delivered certificates representing an additional 2225 shares to the railroad. Thereafter the railroad went into receivership and the railroad turned the certificates over to the receiver. The Fourth Circuit held that the creditor was entitled to the additional 2225 shares as against the receiver, wherein it stated in *Powell, supra*, at pg. 272:

"It is true, of course, that the rights of general creditors are fixed upon the property of a debtor by a receivership, which is in the nature of legal process.... But, however, important this may be in precluding the levy of attachments or the perfecting of liens, it does not add anything to the title of the debtor or preclude the assertion of rights and equities by others to property in his possession. The receivers hold the property, as officers of the court, just as the debtor held it, subject to any rights or equities which could have been asserted against him...."

The Fourth Circuit further found that additional shares from the "50% stock dividend" rightfully and equitably belonged to the secured creditor. Although called a "50% stock dividend", the Fourth Circuit was really referring to a stock split. The Court noted that the total book value of the original shares and new shares equalled the book value of the original shares before declaration of the dividend, such that the railroad had a one-sixth interest in the corporation before and after the dividend.

In view of the similarity between the *Powell* and *Mathews* cases, and research has failed to reveal other case law on the issue, this Court finds that it should follow the holding in *Powell* and *Mathews*.

Although § 544 allows the trustee to defeat unperfected security interests, this Court is accorded broad equitable powers under 11 U.S.C. § 105 to see that justice is done. The Court further finds that it would be inequitable to strip FDIC of half of its collateral. Had bankruptcy not occurred, FDIC would have been entitled to the additional shares.

■■■ The general rule is that absent an agreement to the contrary, additional stock

---

**1.** § 70(c) is the predecessor of § 544(a).

from a stock dividend or stock split belongs to the pledgee. 69 Am.Jur.2d *Secured Transactions* § 234; 19 Am.Jur.2d *Corporations* § 892. Had the stock split occurred prior to the bankruptcy, FDIC could have perfected its interest in the additional shares; but because bankruptcy preceded the stock split, the trustee is requesting this Court, in essence, to cram § 544 down FDIC's throat. FDIC's predecessor, MSB, bargained for the debtors' proportionate interests in Exxon and American Brands; the stock split was a paper transaction; it did not decrease the debtors' proportionate interests; it merely increased the number of shares representing those proportionate interests. Accordingly, the trustee should turnover to FDIC the additional 200 shares of Exxon stock and the additional 100 shares of American Brand stock.

THIS MEMORANDUM SHALL CONSTITUTE MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.